## Christy, Appellant, *v.* Pennsylvania R. R.

*Negligence—Railroads—Automobiles — Collision at crossing — "Stop, look and listen"—Death—Presumption of care—Evidence— Case for court.*

1. Where death occurs at a railroad grade crossing, it will be presumed that the deceased observed due care for his own safety before going on the tracks, but such presumption falls in the face of incontrovertible evidence to the contrary given by the testimony of unimpeached witnesses or by the undisputed circumstances.

2. Where a truck driver is killed by a train at a grade crossing, the fact that a man who rode beside him jumped in time to save himself, is to be taken into account in considering whether deceased also must have seen the train, had he exercised ordinary care by looking for its possible approach before committing himself to the crossing.

Argued April 24, 1925. Appeal, No. 224, Jan. T., 1925, by plaintiff, from judgment of C. P. No. 4, Phila. Co., June T., 1922, No. 3786, on verdict for defendant, in case of Elizabeth Christy v. Pennsylvania Railroad Company. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ. Affirmed.

Trespass for death of plaintiff's husband.    Before
AUDENRIED, P. J.

The opinion of the Supreme Court states the facts.

Judgment on directed verdict for defendant.    Plaintiff appealed.

*Error assigned* was, inter alia, direction of verdict
for defendant, quoting record.

*Frederick J. Shoyer,* with him *Joseph L. Wase,* for appellant.—Death at a crossing raises a presumption of
due care: Zotter v. R. R., 280 Pa. 14.

The following cases held not to rebut the presumption:
Crane v. R. R., 218 Pa. 560; Kreamer v. R. R., 214 Pa.
219; Schwarz v. Ry., 211 Pa. 625; Cromley v. R. R., 208
Pa. 445; Shaffer v. R. R., 258 Pa. 288; Kelly v. Director
General, 274 Pa. 470.

*Effingham B. Morris, Jr.,* with him *Barnes, Biddle &
Morris,* for appellee.—Death at crossing raises a presumption of due care which may be rebutted by testimony or circumstances: Hazlett v. Director General, 274
Pa. 433; Cubitt v. R. R., 278 Pa. 366; Zotter v. R. R.,
280 Pa. 14.

OPINION BY MR. CHIEF JUSTICE MOSCHZISKER, May 11,
1925:

On October 18, 1921, at 12 : 30 p. m., Robert W. Christy
was driving a motor truck along a country highway,
called Guernsey Avenue; when attempting to cross the
track of defendant's railroad, he was struck and instantly killed by one of its trains; his widow sued to
recover damages for herself and two minor children; by
direction of the trial judge, a verdict was rendered for
defendant, on which judgment was entered, and plaintiff
has appealed.

In an opinion refusing a new trial, the president
judge of the court below states: "The facts which

the evidence adduced by the plaintiff tended to establish are as follows: At the scene of the accident, the line of defendant runs approximately east and west: Guernsey Avenue, running north and south, crosses it almost at right-angles.....When struck [Christy's] vehicle..... was moving in a northerly direction; .....it was equipped with left drive, [and] he was seated on the left side of the chauffeur's seat, which was eight or nine feet back of the front end of the truck and elevated about four feet above the ground. Another man sat beside him. The train that struck him was westbound at the time of the collision. It was moving 'pretty fast.' No signal of its approach to the crossing was given. Its bell was not rung. Its whistle was not blown.

"Guernsey Avenue, in 1921, was an ordinary unimproved country road, much used, and was from twenty to twenty-five feet wide. It approaches the railroad track from the south up a steep incline, rising almost ten feet in sixty, and crossing the track at grade. At a point 120 feet south of the railroad its level is at best ten feet below that of the bed of the track. On the west side of Guernsey Avenue, in the angle formed by its west line and the south line of the railroad, stands a building used by Elwood K. Pusey as an ice factory and a slaughterhouse. This [building] is some twenty feet back [from] the avenue and approximately the same distance south of the railroad; a private driveway extends along its south front and opens into Guernsey Avenue 120 feet south of the railroad.

"A very short time before the accident, Christy had purchased a number of old barrels from Pusey's establishment and......loaded them on his truck as it stood in the private driveway above referred to along the south side of the building. Having crossed the slaughterhouse yard into Guernsey Avenue, he stopped......in order to make settlement with Pusey for what he had bought. The latter was called away by another customer, Jackson,......and joined him under the shed on the south

side of an easterly extension of his building, which is used as an office. Jackson saw Christy start his motor from the place where it had been stopped when the latter settled with Pusey, and saw it move northward along Guernsey Avenue toward the railroad crossing. Neither of these witnesses saw the truck stop after it started from the point 120 feet south of the track. It was in motion when Pusey last noticed it; this was when it crossed his line of view as he glanced eastward along the railroad, to which it was then so close that, while he turned and stepped to his [office] desk......, the truck had got upon the track and been struck by the train.....

"Jackson testified that, when he left the shed above referred to, Christy's truck was on the railroad track; that he saw the train approaching it, distant only ten feet, and that he saw the collision. Jackson also testified that, from the moment the truck left the place where it stood while Christy and Pusey made their settlement until the locomotive struck it, the truck made no stop; although he concedes that it was not within his sight while he was paying Pusey......This [latter] interval, however, seems to be covered by the testimony of Pusey, who......saw the truck passing up the ascent to the crossing.

"The view of any one looking down the track toward the east [from whence the train approached] at a point on Guernsey Avenue 120 feet south of [the railroad] was, on the day of the accident, so obstructed that he could not see a train coming from that direction until it was only 150 feet away from the crossing......As Christy neared the crossing his view toward the east became more extended. When 50 feet distant from the track he might have seen 300 feet toward the east. When at a distance of 15 feet from the track his view in that direction was increased [possibly] 50 feet. When, however, he reached a line of trees on the south side of the railroad, his view to the east was completely shut off,

and he could not see down the track......until he was on the rails themselves.

"[It was contended that] in view of [Christy's] death, it [is] to be presumed that he exercised due care for his safety and was in no degree responsible for the collision. A presumed fact, however, falls in the face of incontro- vertible evidence to the contrary given by the testimony of unimpeached witnesses or by the undisputed circum- stances: Hazlett v. Director General of Railroads, 274 Pa. 433.

"Christy knew, or ought to have known, that his truck was approaching a railroad crossing. Of this fact the de- fendant's signpost on the east side of Guernsey Avenue, south of the track, gave him due notice. He was bound to stop, look and listen for on-coming trains; and he should have performed this duty where to do so would have been of avail to him. Also, he should have con- tinued his observations until he had crossed the track. From the point where his truck stood while he settled with Pusey, his view east along the railroad was, accord- ing to the plaintiff's evidence, very limited. Manifestly, he ought not to have depended on such observations as he made there, and [the evidence of plaintiff's wit- nesses indicates that he] made no subsequent stop. Neither of those who noticed it *saw the truck again halted.* Both speak of it as in motion when they saw it on its approach to the track. One of them testified that it did not stop within 120 feet of the crossing. What these witnesses say as to the movement of the truck com- pletely overcomes the presumption that Christy per- formed his duty of stopping his vehicle where his eyes or ears might have given him information of value. The difficulty of making a stop on the ascent to the level of the railroad bed, did not excuse him from compliance with his plain duty [in that regard, for one of plaintiff's witnesses testified that not only could a stop be made in four or five feet, moving slowly up hill as Christy's car was doing, but that he, the witness, had actually made

such a stop, with a like car, similarly loaded]. Had [Christy] paused for a moment, [just] before he crossed the near rail [of this single track road, or had he looked and listened, as was his duty to do] he [in this open, quiet countryside, must] have heard the rattle of the train then so near at hand, even if [at that particular point] sight of the train itself was [obscured] by trees and telegraph poles......[The only one of plaintiff's witnesses who was asked on the point said, he 'did not notice Christy's truck making much noise.'] The conclusion is inevitable that either he failed to use his eyes and ears, or he disregarded the evidence of his senses and thoughtlessly or rashly ran his truck on the track regardless of [danger thus incurred]."

To the foregoing correct statement of facts and law from the opinion of the court below (our insertions therein being warranted by the evidence of plaintiff's witnesses), we may add, the conclusion is irresistible that, had Christy been on the lookout from a point fifty feet south of the track up to the line of trees on its south side, he must have had notice of the train which ran into him, and the circumstance that he had to keep a lookout in both directions cannot alter this fact. Again, the man who rode beside Christy apparently saw the train, for, although he was not called as a witness, we have the fact that this man jumped from the truck in time to save himself from injury, which is to be taken into account in considering whether Christy also must have seen the train had he exercised ordinary care by looking for its possible approach before committing himself to the crossing.

As stated in the opinion of the court below, "The testimony of the witnesses called by the defense indicated very clearly that the facts of the case were far less favorable to a recovery [than suggested by the evidence already reviewed], and the preponderance of the evidence was to the effect that Christy had an opportunity to see the train when [it was] about [1900] feet away from the

crossing; that its speed did not exceed the rate of thirty-five miles an hour; that ample notice of its approach to Guernsey Avenue was given by both whistle and bell"; that those in charge of the engine, expecting the truck to stop, put on the locomotive brakes as soon as they realized that "instead of [paying attention], the two occupants of the chauffeur's seat on the truck were looking downward and fooling with something at their feet." But, of course, the determination of the court below was based on the evidence produced by plaintiff, as is the decision we are about to make.

After reading the printed testimony and carefully considering the arguments of counsel for appellant, we are not convinced of error.

The judgment is affirmed.